**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: _____

CARLOS INNISS, on behalf of himself and all others similarly situated,

 Plaintiff,

v.

ROCKY MOUNTAIN INVENTORY, INC., a Colorado corporation,
BRIAN HUNGERFORD, an individual,
JANINE HUNGERFORD, an individual, and
LINDA HUNGERFORD, an individual,

 Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Carlos Inniss ("Plaintiff"), on behalf of himself and all others similarly situated, through counsel, Lewis Kuhn Swan PC, complains as follows:

**NATURE OF THIS ACTION**

1. This action is brought on behalf of all inventory auditors and individuals holding comparable positions with different titles (collectively, "Inventory Auditors") employed by Defendant Rocky Mountain Inventory, Inc. ("RMI") within the United States within the applicable statute of limitations. This case is brought as a collective action under 29 U.S.C. § 216(b) of the Fair Labor Standards Act of 1938 ("FLSA") and as a class action under Fed. R. Civ. P. 23.

2. Plaintiff alleges that Defendants violated the FLSA, 29 U.S.C. §§ 201 *et seq*., and the applicable Colorado Minimum Wage Order ("Colorado Wage Order"), 7 Colo. C. Reg. § 1103-1, by failing to pay Inventory Auditors (i) the minimum wage for all hours worked as required by

the FLSA and the Colorado Wage Order; and, (ii) and overtime compensation at the proper regular rates of pay.

## JURISDICTION AND VENUE

3. This Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff alleges a claim under 29 U.S.C. § 216(b).

4. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367 because it is so related to the FLSA claim that it forms part of the same case or controversy.

5. RMI is subject to personal jurisdiction in Colorado because it conducts substantial business in this state and the acts and omissions alleged herein occurred in this State. The individual Defendants are subject to personal jurisdiction in Colorado because they are residents and citizens of Colorado.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

7. Plaintiff is an individual who is domiciled and resides in Colorado Springs, Colorado.

8. RMI is a Colorado corporation having a principal office street address of 9693 S. Laredo Street, Highlands Ranch, Colorado 80130.

9. Defendant Brian Hungerford is, upon information and belief, an owner of RMI. Defendant Janine Hungerford is the wife of Brian Hungerford and, upon information and belief, an owner of RMI. Defendant Linda Hungerford is, upon information and belief, the mother of

2

Brian Hungerford and one of the founding owners of RMI. Linda Hungerford together with Brian Hungerford and Janine Hungerford are collectively referred to herein as "the Hungerfords." Upon information and belief, the Hungerfords are each citizens of, and domiciled in, Colorado. Upon information and belief, the Hungerfords, and each of them, are responsible for RMI's pay practices and exercise substantial control over its finances and operations. As such, they are individually liable for RMI's illegal pay practices as alleged herein pursuant to the FLSA. RMI, together with the Hungerfords, are collectively referred to herein as the "Defendants."

## COLLECTIVE ACTION ALLEGATIONS

10. Plaintiff seeks to prosecute the FLSA claim as an "opt-in" collective action on behalf of all persons who are or were employed by RMI as Inventory Auditors in the United States at any time in the last three (3) years through the date of entry of judgment in this case and (i) were not paid minimum wage for all hours worked ("Minimum Wage Collective"); and/or (ii) were not paid overtime for all hours worked, or at an appropriate rate of pay for hours worked, in excess of forty in a workweek ("Overtime Collective"). The Minimum Wage Collective and Overtime Collective are together referred to as the "Collectives."

11. Plaintiff will fairly and adequately protect the interests of the members of the Collectives and has retained counsel who are experienced and competent in the fields of wage and hour law and class action litigation. Plaintiff has no interest contrary to or in conflict with the members of this collective action.

12. The members of the Collectives are similarly situated because, among other things, they were all victims of the same company-wide policies and procedures that failed to pay them all the wages to which they are entitled under the FLSA.

## CLASS ACTION ALLEGATIONS

13. Plaintiff sues on his own behalf and on behalf of a class of persons under Rules 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure based on Defendants' violation of the Colorado Wage Order, 7 Colo. C. Reg. § 1103-1.

14. Plaintiff brings his Colorado state law claim on behalf of all persons who were employed by RMI in Colorado at any time in the last three (3) years through the date of the entry of judgment in this case who hold or held the position of Inventory Auditor and (i) were not paid minimum wage for all hours worked ("Minimum Wage Class"); and/or (ii) were not paid overtime for all hours worked, or at an appropriate rate of pay for hours worked, in excess of forty in a workweek or twelve hours in a work day ("Overtime Class"). The Minimum Wage Class and the Overtime Class are together referred to as the "Colorado Classes".

15. The members of the Colorado Classes are so numerous that joinder of them is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of RMI, upon information and belief, there are at least 30 members of the Colorado Classes.

16. Plaintiff's claims are typical of the claims of the members of the Colorado Classes. Plaintiff performed the same job as the members of the Colorado Classes; RMI paid Plaintiff and the members of the Colorado Classes pursuant to the same policies and procedures; and Plaintiff and the members of the Colorado Classes were victims of the same wrongful conduct engaged in by RMI in violation of the Colorado Wage Order.

17. The class action mechanism is superior to any alternatives which might exist for the fair and efficient adjudication of this cause of action. Proceeding as a class action would permit

the large number of injured parties to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence, effort, and judicial resources. A class action is the only practical way to avoid the potentially inconsistent results that numerous individual trials are likely to generate. Moreover, class treatment is the only realistic means by which plaintiffs can effectively litigate against, on information and belief, a well-capitalized corporate defendant. Numerous repetitive individual actions would also place an enormous burden on the courts as they are forced to take duplicative evidence and decide the same issues relating to RMI's conduct.

18. RMI has acted or refused to act on grounds generally applicable to the Colorado Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Colorado Classes as a whole.

19. Plaintiff is committed to pursuing this action and has retained competent counsel who are experienced in wage and hour law and class action litigation.

20. Plaintiff will fairly and adequately protect the interests of the members of the Colorado Classes.

21. There are questions of law and fact common to the Colorado Classes which predominate over any questions solely affecting the individual members of the Colorado Classes, including but not limited to:

    a) whether RMI employed the members of the Colorado Classes within the meaning of the Colorado Wage Order;

    b) whether RMI's policies and practices described within this Complaint are illegal;

    c) whether RMI paid the members of the Colorado Classes for all hours worked;

5

  d) whether the payments to the members of the Colorado Classes were within the minimum wages required by applicable law;

  e) whether RMI properly calculated the number of overtime hours payable to the members of the Colorado Classes based on their work beyond forty hours in a workweek or twelve hours in a work day;

  f) whether the overtime rates paid to the members of the Colorado Classes were those required by law;

  g) what proof of hours worked is sufficient where employers fail in their duty to maintain accurate time records; and,

  h) whether RMI is liable for all damages claimed hereunder.

## STATEMENT OF FACTS

22. Plaintiff began his employment with RMI as an Inventory Auditor on March 21, 2017, and was terminated from RMI on Friday, June 8, 2018 after he questioned RMI's pay practices and objected thereto. RMI terminated Plaintiff because of his questioning of RMI's pay practices and objections thereto.

23. Plaintiff is, and at all times relevant hereto was, employed by RMI with the title of Inventory Auditor. The job responsibilities of Inventory Auditors include traveling to the site of RMI's customers (such as grocery stores) and performing an inventory of goods on hand at the stores.

24. Inventory Auditors are non-exempt under the FLSA and the Colorado Wage Order, and are so classified by RMI.

25. Many of RMI's customers have stores dozens or hundreds of miles from the homes of Inventory Auditors. To service these clients, RMI requires Inventory Auditors to travel to the locations of customers' stores to perform the inventory audits. Often the trips required that the Inventory Auditors stay overnight in a hotel if the inventory work or attendant travel could not be completed in a single day.

26. RMI's compensation methods for Inventory Auditors rely on different compensation rates and types for work performed during a day. A typical day of work for Inventory Auditors includes the components described in the remainder of this paragraph. For purposes of illustration, assume that an RMI customer has two stores (Store One and Store Two) in Fort Collins, Colorado, both of which will be inventoried on the same day by Plaintiff working with a crew of other Inventory Auditors who live in Colorado Springs. Using this illustration, Plaintiff would:

a) Travel from home to an assigned local meeting place;[1]

b) At the meeting point, the Inventory Auditor (together with the rest of the crew assigned for Store One and Store Two) would be picked up in a company-owned vehicle driven by a member of the crew;

c) The crew would be driven in the company vehicle to Store One in Fort Collins (this element of the day will be referred to in this Complaint as over-the-road ("OTR") travel);

d) The crew would perform an inventory at Store One (this element of the day will be referred to in this Complaint as "inventory duty");

---

[1] On some occasions, the company vehicle (or, rarely, a personal vehicle) would be driven to pick up Inventory Auditors at their homes.

7

e) The crew would travel from Store One to Store Two in the company-owned vehicle (this element of the day will be referred to in this Complaint as "inter-store travel");

f) The crew would perform inventory duty at Store Two;

g) The crew would be transported in the company vehicle from Store Two to the assigned local meeting point in Colorado Springs, and the crew would thereafter be responsible for getting themselves home.

27. RMI putatively paid for these elements as follows:

a) For travel from home to the assigned meeting point, and for travel from the assigned meeting point to home, nothing was paid;

b) For OTR travel, RMI paid Plaintiff 15 cents per mile after deducting 60 miles. Using the hypothetical Fort Collins stores and assuming a distance of 100 miles between the assigned meeting point in Colorado Springs and Store One in Fort Collins, and another 100 miles between Store Two returning to the assigned meeting point in Colorado Springs, the compensated OTR travel component would be 140 miles (200 miles minus 60 miles). At 15 cents per mile, the total compensation paid to each Inventory Auditor for OTR travel would be 140 x 0.15 = $21. This same rate per mile is paid for OTR travel irrespective of the number of hours required for the OTR travel.

c) For inter-store travel, Plaintiff is paid for travel time at the prevailing minimum wage. If inter-store travel required thirty minutes, Plaintiff would be paid $10.20 (the 2018 Colorado minimum wage) x 0.5 = $5.10.

d) For inventory duty, Plaintiff would be paid $12 per hour. Assuming inventory duty at Store One required three hours, and inventory duty at Store Two required another three hours,

8

the total putative compensated inventory for the day would be six hours, or a total for the day of $72.

   e) Using the above examples, the total compensation putatively to be paid to Plaintiff for the day would be $98.50.

  28. Assuming clear highways and good weather, the minimum travel time between the assigned meeting point in Colorado Springs and the respective stores in Fort Collins could easily be two hours each direction, for a total OTR travel time for the day of four hours. Using the above examples, and assuming perfect OTR travel conditions, Plaintiff would be compensated for this day at a rate of $9.38 per hour, below the Colorado minimum wage.

  29. While Plaintiff sometimes is putatively paid overtime for non-OTR time exceeding forty hours per workweek (though rarely for time exceeding twelve hours per work day) at a rate of one-and-one-half times his regular rate of pay, the OTR travel time is not counted as compensable time for determining whether Plaintiff works overtime, nor has this time ever been counted in determining the amount of overtime to which Plaintiff was entitled. This violates the FLSA and the Colorado Wage Order.

  30. While the above example assumes stores in Fort Collins, Colorado, Inventory Auditors are frequently required by RMI to travel much greater distances. For example, Inventory Auditors are often required to travel to stores in Kansas, Wyoming, and New Mexico. It is common for Inventory Auditors to work days exceeding twelve consecutive hours of work duty.

  31. OTR travel was compensable time under the FLSA and the Colorado Wage Order for at least the following reasons: a) the travel time was in fact compensated (though at a rate which was frequently below the federal and state minimum wages); b) employees were required to pick

9

up and transport RMI's inventory equipment to the assigned stores; c) employees were "on duty" during the OTR travel because they were frequently required to drive the vehicle and because they were on-call during OTR travel. As used here, "on-call" means employees had to be prepared to stop off at additional customers' stores as might be assigned by RMI.

32. RMI has in place no timekeeping method for determining time spent in OTR travel.

33. While RMI has in place a timekeeping method for clocking or entering time spent on inventory duty and certain other miscellaneous duties, the hours so clocked or entered are frequently reduced without explanation by RMI.

34. Plaintiff was frequently required to undertake miscellaneous work off-the-clock for the benefit of RMI to prepare for the following day's assignments. For example, on Christmas Day, 2017, Plaintiff was required to coordinate and carry out the handoff of required equipment from another employee to allow Plaintiff to perform the duties required of him on December 26, 2017. On other occasions, Plaintiff has performed miscellaneous tasks for RMI for which he was promised compensation and which he, in fact, recorded in the RMI time-keeping system, for which he has rarely been compensated either at the standard hourly rate or for overtime.

35. Plaintiff routinely worked more than forty hours per workweek and twelve hours per workday, particularly in view of the OTR travel required for the job.

36. As an example of a workweek in which Plaintiff worked more than forty compensable hours, for the workweek beginning March 18, 2018, Plaintiff devoted at least 81.5 hours to work. However, he was paid only for forty-nine hours by RMI. During this week, he was paid for nine hours of overtime, though based on his hours over forty, he should have been paid for 41.5 hours of overtime at a rate of one-and-one-half his regular rate of pay.

37. As an example of workdays on which Plaintiff performed compensable work in excess of twelve hours, on February 19, 2018, Plaintiff left his home at 6:31 a.m. to pick up a coworker and drove to a store in Colorado Springs. Plaintiff performed inventory work from 7:07 a.m. to 12:34 p.m. at that store. Plaintiff then drove to a second store in Colorado Springs with the coworker and performed inventory work from 1:05 p.m. to 5:12 p.m. Plaintiff then drove to Fountain, making two stops to pick up two other coworkers. All four employees were required to be in Casa Blanca, New Mexico by 5:00 a.m. the next day. After fueling the vehicle and loading luggage, they departed Fountain, Colorado at 6:59 p.m. and drove to Albuquerque, New Mexico where a hotel had been arranged for them. Plaintiff and his coworkers checked into the hotel at 2:12 a.m. on February 20, 2018. At the hotel, three other RMI employees (who had also driven through the night after working at different stores the preceding day) met up, and the seven employees departed the hotel at 4:29 a.m. and traveled to Dancing Eagle Supermarket in Casa Blanca, New Mexico, arriving at 4:57 a.m. The crew performed inventory work at the store until 5:43 p.m., and then returned to the hotel, where they were finally able to rest. On both February 19, 2018 and February 20, 2018, Plaintiff performed work exceeding twelve hours, for which he was entitled to overtime under the Colorado Wage Order, and for which no overtime was paid.

38. Throughout all relevant time periods, RMI failed to maintain accurate and sufficient time records and endeavored to maintain opacity in its pay practices. Among other things, RMI did not track or attempt to track OTR travel time, which frequently constituted the largest fraction of an employee's work hours each day.

39. As a condition to being paid, Plaintiff was required to fill out timesheets in which he calculated and submitted to RMI the number of OTR miles he traveled and inventory duty and

inter-store travel time he had worked. Plaintiff was not compensated for the time he spent filling out or submitting the timesheets.

40. Upon receipt of the timesheets, RMI would then prepare a paycheck to Plaintiff. Frequently, the paychecks were for less than the amounts identified on the timesheets. No explanation was ever provided for any deductions. In addition, as RMI was exclusively reliant on its own internal data for preparing paychecks, the need for the timesheets was highly suspect, and, upon information and belief, was merely an artifice to delay payments to employees.

41. In early 2018, RMI began using a timekeeping system called Exaktime. Using Exaktime, Inniss would record the time he arrived at a store and the time he left a store. For a brief period after Exaktime was implemented, RMI sent (or caused the system to send) the Exaktime data to Plaintiff. As with the mandatory and uncompensated timesheets, the paycheck actually issued to Plaintiff was for a number of hours less than the Exaktime figures. After Plaintiff inquired about this discrepancy, and in an effort to maintain opacity in its pay practices, RMI stopped providing (or caused the system to stop providing) the Exaktime data to Plaintiff. RMI still has never explained the discrepancy.

42. Defendants' violations of the FLSA and the Colorado Wage Order are willful. Defendants are well aware of RMI's legal obligation to pay overtime compensation because RMI employs numerous individuals to whom RMI pays overtime premiums.

43. Because of the opacity of RMI's pay practices, it is currently impossible for Plaintiff to determine whether RMI currently or has in the past provided for the compensated break periods or compensated or uncompensated lunch breaks as required by the Colorado Wage Order.

## FIRST CLAIM FOR RELIEF
## FAIR LABOR STANDARDS ACT -
## COLLECTIVE ACTION AGAINST ALL DEFENDANTS

44.     All preceding paragraphs are incorporated.

45.     At all relevant times, RMI has been, and continues to be, an employer engaged in interstate commerce within the meaning of the FLSA.

46.     At all relevant times, each of the Hungerfords has been, and continues to be, an employer engaged in interstate commerce within the meaning of the FLSA.

47.     At all relevant times, Defendants employed and/or continue to employ each of the members of the Collectives within the meaning of the FLSA.

48.     At all relevant times, on information and belief, RMI has had gross annual revenues exceeding $500,000.

49.     At all relevant times, RMI had a uniform policy and practice of failing to pay Inventory Auditors for all hours worked, of failing to compensate them at the appropriate minimum wage, and of failing to pay overtime compensation for all overtime hours at one-and-one-half their respective proper regular rates of pay.

50.     As a result of RMI's willful failure to properly compensate its employees, including Plaintiff and the Collective members, RMI has violated and, continues to violate, the FLSA.

51.     RMI has failed to make, keep, and preserve records with respect to each of its employees sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FLSA.

52.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning 29 U.S.C. § 255(a).

53. Due to Defendants' FLSA violations, Plaintiff and the Collective members are entitled to recover from Defendants unpaid minimum wages, unpaid overtime compensation, actual and liquidated damages, including RMI's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, reasonable attorneys' fees, costs, and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

54. The opt-in forms of Paulette Bieber, Jsonin Dilley, Debbie Wiederhold, and Melody Solano are attached as Exhibit 1.

### SECOND CLAIM FOR RELIEF
### COLORADO WAGE ORDER – CLASS ACTION AGAINST RMI

55. All preceding paragraphs are incorporated.

56. At all relevant times, Plaintiff and the members of the Colorado Classes were employed by RMI within the meaning of the Colorado Wage Order.

57. RMI is covered under the Colorado Wage Order as it is a commercial support service.

58. RMI violated the Colorado Wage Order by failing to pay Inventory Auditors for all hours worked at the minimum wage prescribed by the Colorado Wage Order, by failing to properly calculate overtime hours, and by failing to pay overtime compensation at the rates required.

59. Plaintiff and the members of the Colorado Classes are entitled to recover from RMI minimum wage for all hours worked, overtime compensation at the appropriate premium for hours worked over forty in a workweek or twelve in a work day, any statutory penalties, including the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, reasonable attorneys' fees, costs, and disbursements of this action, pursuant to the Colorado Wage Order.

## THIRD CLAIM FOR RELIEF
### INDIVIDUAL CLAIM FOR RETALIATORY DISCHARGE

60. All preceding paragraphs are incorporated.

61. Beginning in February, 2018, Plaintiff complained to RMI about its random deletion of clocked hours and its failure to pay for all hours worked by Plaintiff.

62. On June 8, 2018, RMI terminated Plaintiff's employment because of these complaints.

63. RMI's termination of Plaintiff was unlawful under FLSA.

## PRAYER FOR RELIEF

Wherefore, Plaintiff on behalf of himself and all other members of the Collectives and the Colorado Classes respectfully requests that this Court grant the following relief:

a) Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and/or (3) on behalf of members of the Colorado Classes and appointing Plaintiff and his counsel to represent the classes;

b) Designation of this action as a collective action on behalf of the members of the Collectives and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the Collectives, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

c) A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the Colorado Wage Order;

d) An injunction requiring Defendants to cease their unlawful practices under, and to comply with, the Colorado Wage Order;

15

e) An award of overtime compensation due under the FLSA and the Colorado Wage Order;

f) An award of liquidated and/or punitive damages as a result of the Defendant's willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

g) An award of actual and punitive damages to Plaintiff in consequence of the Third Claim for Relief for retaliatory discharge, together with attorneys' fees and other appropriate relief;

h) An award of damages representing the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

i) An award of pre-judgment and post-judgment interest;

j) An award of costs and expenses of this action together with reasonable attorneys' and expert witness fees; and

k) Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

64. Plaintiff demands a jury trial on all causes of action and claims with respect to which he and all members of the proposed Collectives and Colorado Classes have a right to jury trial.

Respectfully submitted this 13th day of June, 2018.

> */s/ Paul F. Lewis*
> Paul F. Lewis
> Michael D. Kuhn
> Andrew E. Swan
> LEWIS | KUHN | SWAN PC
> 620 North Tejon Street, Suite 101
> Colorado Springs, CO 80903
> Telephone: (719) 694-3000
> Facsimile: (866) 515-8628
> plewis@lks.law

mkuhn@lks.law
aswan@lks.law

*Attorneys for Plaintiff*