IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-1475-WJM-KMT

CARLOS INNISS, on behalf of himself and all others similarly situated,

    Plaintiff,

v.

ROCKY MOUNTAIN INVENTORY, INC., a Colorado corporation,
BRIAN HUNGERFORD, an individual,
JANINE HUNGERFORD, an individual, and
LINDA HUNGERFORD, an individual,

    Defendants.

---

## ORDER DENYING MOTION TO DISMISS

---

Plaintiff Carlos Inniss ("Inniss") brings this action against Rocky Mountain Inventory, Inc. ("RMI"), Brian Hungerford, Janine Hungerford, and Linda Hungerford (together, "Hungerfords") (collectively, "Defendants") for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and similar state laws. (ECF No. 26.) Inniss claims he was an "Inventory Auditor" for RMI, and that RMI's payment structure for Inventory Auditors deprives them of FLSA-mandated overtime pay and pay required under Colorado law.

Currently before the Court is Defendants' Partial Motion to Dismiss Amended Complaint. (ECF No. 40.) For the reasons explained below, the Court will deny this motion.

### I. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a

claim in a complaint for "failure to state a claim upon which relief can be granted." The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

## II. BACKGROUND

The Court accepts the following as true for purposes of Defendants' motion.

"The job responsibilities of Inventory Auditors include traveling to the site of RMI's customers (such as grocery stores) and performing an inventory of goods on hand at the stores." (ECF No. 26 ¶ 27.) Sometimes the stores are far away from the Inventory Auditors' homes, meaning that Inventory Auditors travel long distances and, in some circumstances, stay overnight in hotels. (*Id.* ¶ 29.) RMI pays Inventory Auditors on a per-mile basis (after a 60-mile deductible) when traveling from home to a store and back. (*Id.* ¶ 31(b).) If the Inventory Auditor must travel from one store to another in the same area on the same day, he or she is paid minimum wage for that travel time. (*Id.*

2

¶ 31(c).) RMI does not factor travel time into its calculations of whether it needs to pay overtime. (*Id.* ¶ 33.)

In addition to these pay practices, Inniss was required to "undertake miscellaneous work off-the-clock for the benefit of RMI to prepare for the following day's assignments. For example, on Christmas Day, 2017, [Inniss] was required to coordinate and carry out the handoff of required equipment from another employee to allow [him] to perform the duties required of him on December 26, 2017." (*Id.* ¶ 38.)

Inniss routinely worked more than 40 hours per week and 12 hours per day, particularly when factoring in travel time. (*Id.* ¶ 39.)

Beginning in February 2018, Inniss complained "to RMI" or to "each of the Hungerfords" about discrepancies between hours he recorded in a system called "Exaktime" and hours for which he was actually paid. (*Id.* ¶¶ 65–66.) These complaints continued "over the following months" but he received no response. (*Id.* ¶¶ 66–67.) A response finally came on June 6, 2018, when Janine Hungerford explained "that RMI altered the hours reported by Exaktime based on other data to which the employees were not privy." (*Id.* ¶ 68.) Two days later, RMI terminated Inniss. (*Id.* ¶ 69.)

Inniss now brings claims for failure to pay all amounts he should have been paid under the FLSA (Count 1), failure to pay all amounts he should have been paid under the Colorado Wage Payment Act and Colorado Wage Order (Count 2), and retaliation for asserting his FLSA rights (Count 3). (*Id.* at 15–17.)

### III. ANALYSIS

**A. Hungerford Defendants' Potential Individual Liability for FLSA Violations (Count 1)**

Inniss seeks to hold both RMI and the Hungerfords liable together for the alleged

3

FLSA violations. The Hungerfords argue that Inniss has not adequately pleaded potential individual liability. (ECF No. 40 at 4–7.)

The Tenth Circuit has never held that owners of a corporate employer that employed an FLSA plaintiff may also be considered that plaintiff's employer(s). But other courts have held as much, *see, e.g.*, *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971–72 (5th Cir. 1984); *Donovan v. Agnew*, 712 F.2d 1509, 1511–12 (1st Cir. 1983), and the Hungerfords do not argue that individual liability is *per se* unavailable in these circumstances (*see* ECF No. 40 at 5 n.4). Accordingly, the Court turns to the question of how to identify an "employer" for FLSA purposes.

The FLSA says that "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). This District normally examines the following four factors to determine if an alleged employer should be deemed an employer under the FLSA:

> An employer under the [FLSA] is someone who:
>
> 1) has the power to hire and fire the employee;
>
> 2) supervises and controls the employee's work schedule or conditions of employment;
>
> 3) determines the rate and method of payment; and
>
> 4) maintains employment records.

*Robertson v. Bd. of Cnty. Comm'rs of Cnty. of Morgan*, 78 F. Supp. 2d 1142, 1151 (D. Colo. 1999). "No one factor is dispositive, but instead a court must consider the economic realities and the circumstances of the whole activity." *Id.* (internal quotation

4

marks omitted).[1]

Here, Inniss alleges that the Hungerfords are all "owners" of RMI (ECF No. 26 ¶ 11), but ownership by itself is not relevant under the *Robertson* factors (although the Court takes account, below, of the *closely-held* ownership structure). Inniss further alleges, "[u]pon information and belief," that

> the Hungerfords, and each of them, are responsible for RMI's pay practices, including the pay practices described herein, and exercise substantial control over its finances and operations. For example, and without limitation, each of the Hungerfords were responsible for determining and implementing RMI's pay practices described herein, each had input into or final decision-making authority over hiring and firing of employees of RMI, including Plaintiff, and each was involved in monitoring employee performance, maintaining records thereof, and taking corrective action with respect thereto.

(*Id.* ¶ 13.) This essentially parrots the *Robertson* test, and is therefore an insufficient "threadbare recital[] of the elements of a cause of action," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), unless supported by specific factual content. As to that, Inniss's complaint offers two salient details: first, "he was repeatedly castigated by Brian Hungerford and Janine Hungerford for not turning in mileage reports" in certain circumstances (*id.* ¶ 47); and second, he "inquire[d] about the deletion of [hours tracked in the 'Exaktime' system] with each of the Hungerfords" during a certain time period and Janine Hungerford eventually "responded to [these] complaints" by explaining that RMI uses "data to which employees were not privy" to alter the hours reported in Exaktime

---

[1] Although *Robertson* uses the phrase "economic realities," its test should not be confused with the "economic realities test" for deciding whether an alleged employee is actually an employee instead of an independent contractor. *See Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998).

5

(*id.* ¶¶ 66, 68).[2]

These allegations are thin, but the Court finds them sufficient under the circumstances to "nudge[] [Inniss's claim] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. First, Inniss alleges that RMI is a closely-held corporation controlled solely by the Hungerfords. (ECF No. 26 ¶ 10.) Second, Brian and Janine Hungerford "castigated" Inniss for not turning in mileage reports (*id.* ¶ 47), suggesting that they supervise his employment and maintain employment records. Third, Inniss complained to "each" of the Hungerfords about pay discrepancies (*id.* ¶ 66), and it is a fair inference that if he complained to them, they had some authority to supervise him and to maintain records.

The Court also notes the pure formalism of Defendants' argument. Although Defendants may not directly contradict Inniss's allegations at the Rule 12(b)(6) stage, there is no hint—even in a footnote—that a fuller record would demonstrate that none of the Hungerfords satisfy any of the *Robertson* factors.

For all these reasons, Inniss's allegations are sufficient at the pleading stage (although they would likely not be enough to survive summary judgment). This aspect of Defendants' motion will be denied.[3]

## B.    FLSA Retaliation (Count 3)

The FLSA prohibits "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has," among other things, "filed any complaint

---

[2] In his response to Defendants' motion to dismiss, Inniss cites paragraph 69 of his complaint for the proposition that his complaints "ultimately led Brian Hungerford and Janine Hungerford to terminate [his] employment." (ECF No. 42 at 4.) Paragraph 69 says only that "RMI terminated [his] employment because of these complaints."

[3] The Court therefore need not address the many additional documents Inniss attaches to his response brief. (*See* ECF No. 42 at 4–6.)

. . . related to [the FLSA]." 29 U.S.C. § 215(a)(3). Inniss alleges that Defendants fired him for complaining about the discrepancy between hours recorded in Exaktime and hours for which he was paid. (ECF No. 26 ¶¶ 65–69.) Defendants argue that Inniss has not adequately pleaded an FLSA retaliation cause of action. (ECF No. 40 at 8–11.)

> To establish a prima facie case of FLSA retaliation, a plaintiff must show that: (1) he or she engaged in activity protected by the FLSA; (2) he or she suffered adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection existed between the employee's activity and the employer's adverse action.

*Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997). Defendants concede that the second element is satisfied by Inniss's allegations of being terminated. (ECF No. 40 at 8 n.6.) Defendants challenge the first and third elements, which the Court will address in turn.

1. Protected Activity

Again, protected activity includes "fil[ing] any complaint . . . related to [the FLSA]." 29 U.S.C. § 215(a)(3). "[U]nofficial assertion of rights through complaints at work" counts as "filing a complaint." *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 387 (10th Cir. 1984). However, "a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the [FLSA] and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011).

Inniss repeatedly complained about the difference between his hours as recorded in Exaktime and the hours for which he was paid. (ECF No. 26 ¶¶ 47, 65–66.) Thus, he says he repeatedly complained "that he was not being paid for time he had worked." (ECF No. 42 at 8.) Neither side provides the Court with any case law

7

evaluating whether complaints of this character are enough to satisfy the *Kasten* standard at the pleading phase. Between the two sides, it was Defendants' burden to come forward with case law, and Defendants have plainly not met that burden. Accordingly, the Court finds that Inniss has adequately alleged protected activity.

2. Causal Connection

Defendants argue that Inniss has not properly pleaded causation. Specifically, Defendants say that the time span between his complaints and his termination is not enough, by itself, to infer causation. (ECF No. 40 at 9–11.)

"A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (internal quotation marks omitted). On appeals from summary judgment orders, the Tenth Circuit has stated that termination following protected activity may create an inference of causation, but "[u]nless the termination is very closely connected in time to the protected conduct, the plaintiff will need to rely on additional evidence beyond mere temporal proximity." *Conner*, 121 F.3d at 1395. Also in the summary judgment context, the Tenth Circuit has explained that "very closely" means something between six weeks (or less) and three months. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) ("[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation." (citation omitted)).

Defendants say that Inniss complained in February 2018 and was fired in June 2018, which is too long according to the foregoing cases to establish causation by

8

temporal proximity alone. Again, however, the foregoing cases address summary judgment, not failure to state a claim. Moreover, Inniss alleges that, "*[b]eginning* in February 2018," and "*continu[ing]* . . . over the following months," he complained about hours discrepancies, and that "Janine Hungerford finally responded to [these] complaints" on June 6, 2018. (ECF No. 26 ¶¶ 65–68 (emphasis added).) Two days later, he was fired. (*Id.* ¶ 69.) This is somewhat vague, but it is not suspiciously vague. The Court finds it sufficient at the pleading stage to raise an inference of causation through temporal proximity that merits discovery.[4]

## IV. CONCLUSION

For the reasons set forth above, Defendants' Partial Motion to Dismiss Amended Complaint (ECF No. 40) is DENIED.

Dated this 29th day of May, 2019.

BY THE COURT:

_____
William J. Martinez
United States District Judge

---

[4] Defendants argue that Janine Hungerford's response on June 6, 2018 should not count in the temporal proximity analysis because a *defendant's* actions cannot be considered "protected activity" against which one may judge temporal proximity. (ECF No. 40 at 10 n.7.) This may be so, but "protected activity" potentially has two temporal components: when the plaintiff engaged in the protected activity, and when the defendant became aware of, or finally paid attention to, the protected activity. Here, it is a fair inference that Defendants tried to ignore Inniss's complaints until early June, but once they turned their full attention to them, they decided to terminate him because of those complaints.

9